[Civ. No. 15568.   Second Dist., Div. One.   Apr. 17, 1947.]

ELLA F. SWEET, Appellant, v. LOS ANGELES RAIL-
WAY COMPANY (a Corporation), Respondent.

W. W. Comstock for Appellant.

Gibson, Dunn & Crutcher and Sherman Welpton, Jr., for Respondent.

WHITE, J.—Plaintiff instituted this action to recover damages for injuries which she sustained while riding as a passenger on a motor bus operated by defendant. The cause was tried before the court sitting without a jury, resulting in a judgment for defendant, from which plaintiff prosecutes this appeal. Plaintiff also attempts to appeal from "the ruling on the motion to re-open the trial, entered the 25th day of January, 1946," but has apparently abandoned the same.

Plaintiff testified that on the morning of October 3, 1944, she boarded the bus; that there were no vacant seats, which compelled her to stand in the aisle at a point between the front and center of the bus, where she was holding onto an upright rod for support. That while she was in this position the operator started the bus, attaining a speed of approximately 40 miles per hour; that suddenly the bus stopped, throwing her to the floor thereof, her head striking on "what I thought was the coin box." Plaintiff also testified that the bus operator "was conversing with a girl that stood right behind him, and she also had her back, like this, hanging on, and he conversed with her, and there was two or three men standing on the steps at the front end, and the driver was having quite a conversation."

Margaret Takacs, a witness for the plaintiff, testified that she was also a passenger on the bus at the time of the accident; that she saw plaintiff fall, observed that the bus stopped "very suddenly" but did not see what "occasioned the driver to stop the bus."

Bernard Mills, called as a witness for the defendant, testified that he was the operator of the bus in question; that at the time plaintiff boarded the same it "was loaded to a seated capacity then, and there were a few standing when she got on"; that after starting from the last loading zone preceding the accident "I had a seat load and approximately ten or fifteen people standing." With reference to what occurred after starting the bus at such last-named loading zone, the operator testified that after the bus started up an automobile made a turn in front of the bus without giving any signal and with the bus only five or six feet away; that the bus had gone about one bus length or thirty-five to forty feet, from the

time it last started up; that when the automobile turned to the left in front of the bus he applied the brakes, at which time he was traveling five to seven miles per hour; that the bus was stopped within four or five feet after application of the brakes; that as he glanced at his mirror he observed plaintiff falling and striking her head on the fare box. That the bus came to a stop within three or four feet of the aforesaid automobile which had also stopped in front of the bus. The bus operator also testified that from the time he started up after the last stop made preceding the accident until its occurrence he had not talked to any passengers. The witness did, however, testify that he would "pass the time of day" with passengers with whom he was acquainted; that he "did feel pretty well acquainted" with some passengers who frequently traveled on the bus and enjoyed "visiting with them."

Julia Slaughter, a witness produced by the defendant, testified that she was a passenger on the bus, was seated on the righthand side in the front seat which faces the aisle and that she was faced toward the driver's side. The witness corroborated the testimony of the bus operator concerning an automobile making a "U"-turn in front of the bus without giving any signal; that to her the driver appeared to be looking straight ahead when he first applied the brakes to avoid striking the automobile.

By her complaint plaintiff alleged that defendant was guilty of negligence in failing and refusing to provide her with a seat and thereby requiring her to stand in the aisle of said motor coach and also in operating the motor coach so negligently and carelessly as to cause it to "come to an unusually and extremely rapid and sudden stop." All allegations of negligence were specifically denied by defendant in its answer, which also, as a separate and affirmative defense, alleged contributory negligence on the part of plaintiff.

The trial court found that on the occasion in question, plaintiff was a passenger on the bus operated by defendant, and "fell to the floor of said bus, but that the fall of said plaintiff and the resulting injuries and damages, if any, to plaintiff were in no way occasioned by the carelessness, recklessness or negligence of said defendant or of any of its agents or employees."

As grounds for reversal, appellant first contends that respondent was guilty of negligence consisting of "the careless operation of the bus by the driver while visiting with a

lady passenger and not giving the required attention to his driving to insure safety for the passengers."

The evidence on this issue was in direct conflict. The bus driver testified that at no time after he left the last loading zone prior to the accident was he in conversation with any of the passengers. And in this he was corroborated by the witness Julia Slaughter, a passenger on the bus who testified "he had his eyes pointed toward the road. I mean his head was straight ahead. I would think he was looking straight down San Fernando Road."

The Legislature of this state has ordained that triers of fact are the exclusive judges of the *credibility* of witnesses (Code Civ. Proc., § 1847), and are the judges of the *effect* and *value* of evidence addressed to them, except in those instances where it is declared by the law that it shall be conclusive proof of the fact to which it relates (Code Civ. Proc., § 2061). Therefore, as a necessary corollary of the aforesaid rules it follows that the trial judge in the case was authorized, if he conscientiously felt warranted in so doing, after full and fair consideration thereof, to reject any testimony which might have been in contradiction to that of witnesses who testified that the driver was not conversing with a passenger or passengers and thereby distracted from giving full, prudent and adequate attention to his duties as the driver of such bus. Reviewing judges are, obviously, in no position to determine the credit which should be ascribed to witnesses or to weigh their testimony.

Finally, appellant earnestly urges that the overcrowding of the bus was in violation of the laws of this state and therefore amounted to negligence as a matter of law. In this regard appellant relies on the following sections of the Civil Code:

Section 2185, which provides: "A common carrier of persons must provide every passenger with a seat. He must not overload his vehicle by receiving and carrying more passengers than its rated capacity allows."

Section 483, reading: "Every railroad corporation must furnish, on the inside of its passenger cars, sufficient room and accommodations for all passengers to whom tickets are sold for any one trip, and for all persons presenting tickets entitling them to travel thereon."

Appellant relies also upon sections 2102 and 2184 of the Civil Code.

The testimony is without contradiction that at the time appellant boarded the motor coach, all of the seats were occu-

pied. In this state it has been held that under such circumstances "a new contract and relationship spring up" between the motor coach company and a passenger (*Kelly* v. *Santa Barbara etc. R. R. Co.*, 171 Cal. 415, 418 [153 P. 903, Ann.Cas. 1917C 67]). The same case is authority for the statement that under such contract "The passenger in voluntarily taking a position of greater peril assumes the natural, obvious risks attending such peril"; that it is incumbent upon such a passenger, in the exercise of the due care always exacted by the law, to take greater precautions for his own safety than if he were seated in the conveyance. It is of course also true that the carrier when it accepts the passenger's fare, "with knowledge of the increased danger of his position, is under obligation to use greater precautions in the operation of the car for the protection of such passengers than would be necessary if all were seated" (*Kelly* v. *Santa Barbara etc. R. R. Co., supra,* p. 419; see, also, 19 Cal.Jur., p. 589, Negligence, § 30).

The reasonableness and common sense attaching to such a construction of the statutory contractual duty of a common carrier to provide every passenger with a seat, based as it is on well-established principles of law pertaining to waiver and assumption of risk is thus commented upon in the case of *Kelly* v. *Santa Barbara etc. R. R. Co., supra,* page 418: "The congested travel upon street and interurban railways at certain hours of the day and upon holidays, upon the one hand, makes it difficult, if not impossible, for the common carrier to provide suitable accommodations for every passenger who desires to ride, and, upon the other hand, compels many of the traveling public to make their journeys under strained conditions or forego them altogether." Added to this is the all-too-apparent fact that were the rule otherwise there would not be sufficient space on the streets of a metropolitan city for enough cars or busses to give every passenger a seat during rush hours. It would require long waiting periods by passengers, with all the attendant crowding and pushing at loading zones, while enough busses and streetcars threaded through the streets, each vehicle loading only as many passengers as they had seats to accommodate. The economic waste of carrier space would place a far greater financial burden on the public to maintain such a transportation system, and the confusion in maintaining no more than a seated load would be a monumental task quite impossible of practical accomplishment.

However, though it be assumed that appellant as a passenger on the bus did not waive her statutory contractual right

to a seat and did not assume the risks ordinarily incident to such a position, nevertheless the violation of the code provisions is immaterial unless it was the proximate cause of the accident. ▉ No action for damages may be founded upon negligence occasioned by failure of any person to perform a duty imposed by law unless such negligence directly contributed to the injury. ▉ Therefore, if the trial court's finding and judgment that the sole proximate cause of the accident was the negligence of a third party in turning an automobile without warning into the path of the bus, causing the operator thereof to stop quickly to avoid a collision, is supported by substantial evidence it is conclusive on appeal. ▉ While it is true that appellant by appropriate allegations in her complaint predicated negligence on the overcrowded condition of the bus and the claimed neglect of respondent to conform with statutory requirements and furnish her with a seat, nevertheless in order to avail appellant the claimed negligence must have some direct and causal connection with the injury complained of. ▉ While it was proper to show the crowded condition of the bus as one of the conditions of the accident, the testimony is undisputed that a third party suddenly and without warning or signal turned his automobile directly into the path of the bus when such bus was but a few feet away and it was this intervening action on the part of such third party that occasioned the sudden application of the brakes, as a result of which appellant was thrown to the floor. While the overcrowded condition of the bus which required appellant to stand may have been a condition in the order of causation by which her injury was brought about, there was substantial evidence to warrant the conclusion of the trial judge that such condition was not the proximate cause of the accident, but that the intervening negligence of the third party driver of the aforesaid automobile was the sole proximate cause (*Cary* v. *Los Angeles R. Co.*, 157 Cal. 599, 604, 605 [108 P. 682, 21 Ann.Cas. 1329, 27 L.R.A.N.S. 764]; *Fresno T. Co.* v. *Atchison etc. Ry. Co.*, 175 Cal. 358, 360 [165 P. 1013]; *Holahan* v. *McGrew*, 111 Cal.App. 430, 442 [295 P. 1054]; *Royal Ins. Co.* v. *Mazzei*, 50 Cal.App. 2d 549, 557 [123 P.2d 586]). As was said in *Hayden* v. *Paramount Productions, Inc.*, 33 Cal.App.2d 287, 293 [91 P.2d 231], quoting from 45 Corpus Juris 931:

"A prior or remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was

made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated, and efficient cause of the injury, even though such injury would not have happened but for such condition or occasion. *If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause....*" (Emphasis added.)

And again, in *Klarquist* v. *Chamberlain & Proctor,* 124 Cal.App. 398, 401 [12 P.2d 664], we find the following quoted with approval from *Storey* v. *City of New York,* 29 App.Div. 316 [51 N.Y.S. 580], where a pedestrian was compelled to walk into the street, around a mound of earth which extended from the curb to a car track, and in so doing was injured by a passing vehicle:

"It is urged with much force that, in the present case, there were two efficient causes—the presence of the mound of earth, which prevented the boy from seeing the horse and cart; and the other, the horse and cart themselves, and that both were proximate causes of the accident. As we have already said, if the boy had tripped and fallen *because of the* mound, and then had been run over, this reasoning would be sound. But the mere presence of the mound, and the fact that it compelled the boy to pass around it, *without the intervention of some other cause would not have produced the accident. We must be careful to avoid confusing two things which are separate and distinct, namely, that which causes the injury, and that without which the injury would not have happened.* For the former the defendant may be liable; *for the latter he will not.* This is well expressed by Kelly, C. B., in *Lord Bailiffs, etc.,* v. *Trinity House* (39 L. J. (Exch.) 163): 'In order to make the defendant liable, his negligence must be the *causa causans,* and not merely a *causa sine qua non.*' And as said in *Robertson* v. *The Mayor* (7 Misc. Rep. [645] 648 [28 N.Y.Supp. 13, 15]): 'The negligence of the defendant, if any there be, was not the proximate or efficient cause of the injury. If after the *cause in question* has been in operation, *some independent force comes in and produces an injury, not its natural or probable effect, the author of the cause is not responsible.*' Other decisions of like import are in harmony with the foregoing. (*Jones* v. *City of Ft. Dodge,* 185 Iowa 600 [171 N.W. 16]; *Setter* v. *City of Maysville,* 114 Ky. 60 [69 S.W. 1074]; *Lambel* v. *City of Florence,* 115 Kan. 111 [222 P. 64].)"

The issue of proximate cause is essentially one of fact and since there was substantial evidence to support the trial court's finding that the overcrowded condition of the bus was not the proximate cause of the accident, and that no danger existed in such condition except because of the gross and intervening negligence of the driver of the automobile involved, which could not have been reasonably anticipated by the bus driver, this court is without authority to disturb the judgment, irrespective of how he might have decided the issues had this tribunal been weighing the evidence in the first instance (2 McK. Dig., Appeal and Error, §§ 1268-1294, incl.).

For the foregoing reasons the attempted appeal ''from the ruling on the motion to re-open the trial, entered on the 25th day of January, 1946'' is dismissed, and the judgment is affirmed.

York, P. J., and Doran, J., concurred.